# ORIGINAL

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only



FILED
CLERK, U.S. DISTRICT COURT

AUG 26 2004

CENTRAL DISTRICT OF CALIFORNIA
BY ☒            DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,<br><br>            Plaintiff,<br><br>            v.<br><br>ALCO PACIFIC, Inc., *et al.*,<br><br>            Defendants,<br><br>AND RELATED COUNTERCLAIMS. | NO. CV 01-9294 SJO (FMOx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR APPROVAL OF CONSENT DECREES** |



DOCKETED ON CM

AUG 31 2004

BY            014

The court has before it Plaintiff State of California Department of Toxic Substances Control's (*hereinafter* "DTSC") Motion for Approval of Consent Decrees. The Motion is opposed by the sole remaining non-settling Defendant, J.L. Shepherd & Associates ("J.L. Shepherd"). The instant matter is set for trial on August 31, 2004. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds this matter is appropriate for decision without oral argument. Having thoroughly considered the arguments and points of law submitted by counsel, Plaintiff's Motion for Approval of Consent Decrees is hereby GRANTED.

340

# I.    BACKGROUND

## A.    Procedural History

As the court explained in greater detail in a series of Opinions and Orders addressing earlier filed motions, this is a cost recovery action brought by the State of California, Department of Toxic Substances Control, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").  The state seeks reimbursement of costs incurred cleaning the site of a former lead processing facility in Carson, California, as well as a declaration that it is entitled to recoup future costs.  The facility in Carson occupied a one-acre parcel of land and it is known as the Alco Pacific Site (the "Site" or "Alco Pacific Site").  Defendants Alco Pacific, Inc. and Morris P. Kirk (*collectively* "Alco Pacific") owned and operated the Site from approximately 1950 to 1990.  *Cal. Dep't of Toxic Substances Control v. Alco Pacific, Inc.*, 317 F. Supp. 2d 1188, 1189 (C.D. Cal. 2004).

Certain named Defendants sent material to the Alco Pacific Site while the Site was in operation.  *Id.*  The material included lead ingots, cuttings, dross and slag.  Plaintiff alleges material sent to the Site by Defendants contributed to contamination at the Site.  *Id.*  Defendants filed a motion for summary judgment raising two issues:  (1) whether the material sent by Defendants to the Site fall under the useful product exemption; and (2) whether the materials otherwise fall under the exemption for recycling of scrap metal ("Recycling Exemption" or "Section 127").  *Id.*  Co-Defendant J.L. Shepherd joined in the motion.  The motion did not address J.L. Shepherd's alleged liability for Cesium-137 contamination on the Site.  *See id.*  The matter came before the court for hearing on January 16, 2004.  The court granted the motion, resolving all claims against the moving parties except for any claims against J.L. Shepherd related to Cesium-137 contamination. (Order of February 06, 2004.)  Defendants subsequently moved for summary judgment regarding the statute of limitations.  *Cal. Dep't of Toxic Substances Control v. Alco Pacific, Inc.*, 308 F. Supp. 2d 1124 (C.D. Cal. 2004)(*hereinafter "Alco Pacific I"*).  That motion was denied on March 03, 2004.  *Alco Pacific I, supra,* 308 F. Supp. 2d at 1137.

Plaintiff DTSC then filed a motion for summary judgment on the Scope of Agency Review.  That motion was filed in order to foreclose Defendants' argument that Plaintiff's response to

2

1   contamination on the Site was "inconsistent with the national contingency plan." *Cal. Dep't of*
2   *Toxic Substances Control v. Alco Pacific, Inc.*, 317 F. Supp. 2d 1188, 1191 (C.D. Cal. 2004)
3   (*hereinafter "Alco Pacific II"*)  According to Plaintiff, each Defendant "alleges this affirmative
4   defense because DTSC may recover, from any responsible party under CERCLA, only those
5   'costs of removal or remedial action . . . not inconsistent with the national contingency plan." *Id.*
6   Plaintiff explained the national contingency plan ("NCP") "is a federal regulation that identifies the
7   types of response actions (in CERCLA terms, "removal" or "remedial" actions) that the United
8   States, a state, an Indian tribe, or a private party may undertake in response to releases or threats
9   of releases of hazardous substances." *Id.*  Plaintiff DTSC suggested the Defendants plan to
10  accuse it of departing from the NCP in order to limit the extent of Plaintiff's recovery.  *Id.*  The
11  court held "pursuant to the language in section 9613(j)(1), this court will not look past the
12  administrative record in determining whether Plaintiff DTSC deviated from the NCP in responding
13  to contamination at the Site." *Alco Pacific II*, 317 F. Supp. 2d at 1194.

14       More recently, J.L. Shepherd moved for "resubmission and reconsideration" of the Opinions
15  and Orders of February 06, 2004 and March 03, 2004.  The Order of February 06, 2004 granted
16  summary judgment on the issue of recycling exemption; and the Order of March 03, 2004 denied
17  summary judgment on the question of whether the statute of limitations had expired. (*See* Order
18  of August 02, 2004.)  In its motion for reconsideration, Defendant J.L. Shepherd argued:  (1) the
19  statute of limitations had run with respect to Cesium-137 contamination; (2) "new facts" were
20  discovered warranting summary judgment as to the Cesium-137 contamination; and (3) any
21  damage award against J.L. Shepherd should be reduced, taking into account the proportionate
22  harm done by Cesium-137 contamination. (*Id.*)  The motion was denied in all respects.  The court
23  reaffirmed its holding in *Alco Pacific*, 308 F. Supp. 2d at 1137, finding there was one single
24  removal action with respect to all contamination.  (*Id.* at 10.)  The court also found it would be
25  inappropriate to apportion or allocate damages until liability is finally determined as to all parties.
26  (*See id.* at 8.)

27       Turning to the matter now before the court, Plaintiff is moving for approval of two Consent
28  Decrees - one for each of the settling Defendants.  The instant Motion would resolve liability and

3

1   damages against two of three remaining Defendants.  The settling Defendants are:  (1) Alco

2   Pacific and Morris P. Kirk (*collectively* "Alco Pacific"); and (2) Lead Products Company, Inc. ("Lead

3   Products").  Defendant J.L. Shepherd opposes the Motion on two grounds:  (1) first, Defendant

4   argues the Motion should be denied because the exact present values of the settlements are

5   unclear; and (2) J.L. Shepherd also argues it is entitled to credit or set-off from settling

6   Defendants.  (Opp'n at 2 & 4.)

7         B.     <u>Settlement and Consent Decree Pertaining to Defendant Alco Pacific</u>

8         The consent decree notes Plaintiff "reviewed the financial information submitted by Alco

9   Pacific to determine whether Alco Pacific is financially able to pay response costs incurred and

10   to be incurred at [the Site]." (P.&A., Ex. A., Alco Pacific Consent Decree at 3:10-13.)  The

11   Consent Decree describes the following features of the settlement between Plaintiff and Alco

12   Pacific:  (1) Defendant Alco Pacific is to pay three hundred thousand dollars; and (2) "all funds

13   remaining in the McKenna Long & Aldridge LLP retainer account for Alco Pacific as of the

14   Effective date of [the] Consent decree." (*Id.* at 4:8-10.)  The settlement provides a lien in favor

15   of Plaintiff to "arise and attach on the Subject Property . . . for any and all past and future

16   response costs incurred, or to be incurred, by the Department regarding the subject property."

17   (*Id.* at 4:22-25.) Moreover, the settlement provides that Alco Pacific shall, within 30 days from the

18   effective date of the instant Consent Decree, "make good faith efforts to sell, transfer, or otherwise

19   assign any interest in the Subject Property . . . at Fair Market Value." (*Id.* at 6:4-16.)  The

20   settlement and Consent Decree require all proceeds from the sale to be transferred to Plaintiff:

21   "Alco Pacific shall pay to the Department all proceeds from any sale, transfer, hypothecation, or

22   assignment of any interest in the Subject Property, less closing costs of sale reasonably incurred

23   and actually paid by Alco Pacific, including reasonable attorneys fees, and less and proceeds paid

24   to the State of California or County of Los Angeles for outstanding property taxes, penalties, and

25   interest thereon." (*Id.* at 7:2-7.)  In return, Plaintiff covenants "not to sue or take any further civil

26   or administrative action . . . against: [Alco Pacific]." (*Id.* at 7:19-23.)  There are, however,

27   extensive "carve-outs" or exceptions to Plaintiff's covenant not to sue. (*Id.* at 9-10.)  Plaintiff, for

28   example, reserves its right to sue if new facts come to light regarding criminal liability or the

1 | existence of "conditions previously unknown to the Department . . . at the Subject Property . . .

2 | indicat[ing] that (1) a hazardous substance has been or is being released . . . and (2) the response

3 | performed at the Subject Property is not protective of human health and the environment." (*Id.*

4 | at 9 & 10.) Finally, the parties stipulate that approval of the instant Consent Decree by this court

5 | shall constitute final judgment with respect to the settling parties pursuant to Fed. R. Civ. P. 54

6 | (b).

7 |         C.      Settlement and Consent Decree Pertaining to Defendant Lead Products

8 |         The salient portions of Plaintiff's settlement with Defendant Lead Products are as follows:

9 | (1) Lead Products agrees to pay Plaintiff $150,000 in three equal installments. (P.&A., Ex. B,

10 | Lead Products Consent Decree at 4.)  The Consent Decree includes a similar covenant not to

11 | sue; with similar exceptions. (*Id.* at 5.)  There is no provision that the settlement between Lead

12 | Products and Plaintiff constitutes final judgment pursuant to Fed. R. Civ. P. 54(b). (*See id.* at 10.)

13 | II.     LEGAL STANDARD

14 |        Plaintiff requests the court approve the Consent Decrees pursuant to 42 U.S.C. § 9612(f),

15 | which provides:

16 |         Settlement. A person who has resolved its liability to the United States or a State
       in an administrative or judicially approved settlement shall not be liable for claims
17 |         for contribution regarding matters addressed in the settlement. Such settlement
       does not discharge any of the other potentially liable persons unless its terms so
18 |         provide, but it reduces the potential liability of the others by the amount of the
       settlement.
19 | 42 U.S.C. 9612(f).

20 |        Approval of a proposed consent decree is committed to the discretion of the district court.

21 | *United States v. Cannons Engineering Corp.*, 720 F. Supp. 1027, 1035 (D. Mass. 1989) (*citing*

22 | *United States v. Hooker Chemical & Plastics Corp.*, 776 F.2d 410, 411 (2d Cir. 1985)). This

23 | discretion is to be exercised in light of the strong policy in favor of voluntary settlement of litigation.

24 | *Id.*; *see also B.F. Goodrich v. Betkoski,* 99 F.3d 505, 527 (2d Cir. 1996) (*commenting* that the

25 | policy favoring settlements is even more pronounced in the CERCLA context.)  The presumption

26 | in favor of settlement is particularly strong where a consent decree has been negotiated by a

27 | government agency specially equipped, trained or oriented in the field.  *See id.* (*citing United*

28 | *States v. National Broadcasting Co.*, 449 F. Supp. 1127, 1144 (C.D. Cal. 1978).

1    A district court should consider whether the decree is "reasonable, fair and consistent with

2    the purposes CERCLA is intended to serve." *U.S. v. Cannons Engineering Corp.,* 899 F.2d 79,

3    85 (1st Cir. 1990). The First Circuit states in *Cannons,* 899 F.2d 79 that "fairness in the CERCLA

4    settlement context has both procedural and substantive components." *Id.* at 86. Other factors

5    for the court to consider include reasonableness of the settlement and fidelity to the statute. *Id.*

6    at 85-93. Accordingly, the four primary factors for this court to consider in the instant matter are

7    (1) the procedural and (2) substantive fairness of the settlement; as well as (3) the

8    reasonableness of the settlement, and (4) the goal of the statute. *See id.*

9    In determining whether a decree is "fair," courts have considered the following:  "the

10    strength of plaintiff's case, the good faith efforts of the negotiators, the opinions of counsel, and

11    the possible risks involved in the litigation if the settlement is not approved." *United States v. Akzo*

12    *Coatings of Am.,* 949 F.2d 1409, 1435 (6th Cir. 1991) (*citing Hooker Chemical & Plastics Co.,* 607

13    F. Supp. at 1057.)  "Fairness should be evaluated from the standpoint of signatories and

14    nonparties to the decree." *Id.* (*citing Conservation Chemical Co.,* 628 F. Supp. 391, 401 (W.D.

15    Mo. 1986)).  "The effect on non-settlers should be considered, but is not determinative in the

16    court's evaluation." *Id.* (*quoting Cannons Engineering Corp., supra,* 720 F. Supp. at 1040.)  "In

17    determining whether a consent decree is 'reasonable' courts have considered the following:  the

18    nature/extent of hazards; the degree to which the remedy will adequately address the hazards;

19    possible alternatives for remedying hazards; and the extent to which the decree furthers the goals

20    of the statute." *Akzo Coatings of Am.,* 949 F.2d at 1436 (*citing Cannons Engineering Corp.,* 720

21    F. Supp. at 1038.

22    III.    DISCUSSION

23         A.    Procedural Fairness

24    "To measure procedural fairness, a court should ordinarily look to the negotiation process

25    and attempt to gauge its candor, openness, and bargaining balance." *Cannons Engineering*

26    *Corp., supra,* 899 F.2d at 86.  In the instant case, settlement negotiations were conducted under

27    the supervision of Magistrate Judge Fernando M. Olguin.  (P.&A. at 7-8.)  Supervision by a

28    magistrate judge or special master is presumptively fair.  *See Pneumo Abex Corp. v. Bessemer*

1   & *Lake Erie RR. Co.*, 936 F. Supp. 1274, 1279 (E.D. Va. 1996); *see also Kelley v. Thomas*

2   *Solvent Co.*, 790 F. Supp. 731, 735 (W.D. Mich. 1991). As already noted by this court, there is

3   a particularly strong presumption in favor of settlement where a consent decree has been

4   negotiated by a government agency specially equipped, trained or oriented in the field. *Cannons*

5   *Engineering Corp.*, 720 F. Supp. at 1035; *see also U.S. v. Montrose Chemical Corp.*, 50 F.3d 741,

6   746 (9th Cir. 1995). Plaintiff, the California Department of Toxic Substances Control, and the

7   California Attorney General are well equipped, trained and experienced in the field. Non-settling

8   Defendant J.L. Shepherd was apprised of both settlements and has filed its objections with the

9   court. In view of all these facts, the court finds the Consent Decrees were negotiated and agreed

10  upon through a process that was procedurally fair.

11        B.    Substantive Fairness

12        According to the First Circuit in *Cannons,* "[s]ubstantive fairness introduces into the

13  equation concepts of corrective justice and accountability: a party should bear the cost of the

14  harm for which it is legally responsible." *Cannons*, 899 F.2d at 87. "Fairness should be evaluated

15  from the standpoint of signatories and nonparties to the decree." *Akzo Coatings of Am.*, 949 F.2d

16  at 1435 (*citing Conservation Chemical Co.*, 628 F. Supp. 391, 401 (W.D. Mo. 1986)). "The effect

17  on non-settlers should be considered, but is not determinative in the court's evaluation." *Id.* In

18  *Cannons,* the First Circuit stated the government agency's "scheme . . . for measuring

19  comparative fault and allocating liability should be upheld so long as the agency supplies a

20  plausible explanation for it, welding some reasonable linkage between the factors it includes in

21  its formula or scheme and the proportionate shares of the settling [parties]." *Cannons,* 899 F.2d

22  at 87. In other words, "the chosen measure of comparative fault should be upheld unless it is

23  arbitrary, capricious, and devoid of a rational basis." *Id.* Of course, it should be no surprise that

24  "nonsettlers [are] at risk of bearing a disproportionate amount of liability . . . [which] can prove to

25  be a substantial benefit to settling [parties] - and a corresponding detriment to their more

26  recalcitrant counterparts." *New York v. Panex*, 2000 U.S. Dist. Lexis 7913 at 9 (W.D. N.Y. 2000)

27  (*quoting Cannons,* 899 F.2d at 91.) An objecting party, "moreover, carr[ies] a heavy burden in

28

1 opposing judicial approval of the settlements, inasmuch as the State's negotiated consent decrees

2 are presumptively valid." *Id.* at 4.

3      In the instant case, Plaintiff does not explicitly attribute a proportionate amount of fault

4 among Defendants. (*See* P.&A. at 10.) The objecting Defendant J.L. Shepherd also does not

5 attempt to calculate any proportional fault, arguing instead that it is entitled to credit or "set-off"

6 from the settling Defendants. (*See generally,* Opp'n) The settlement is affected by the ability of

7 each settling Defendant to pay. (*See, e.g.,* P.&A. Ex. A, Alco Pacific Consent Decree at ¶ 4.3.)

8 Plaintiff justifies the settlement on the relative strength of evidence that each Defendant sent

9 hazardous substances to the Site; and the strength of defenses raised by each Defendant. (P.&A.

10 at 10:6-9.) There is no basis for this court to conclude the apportionment of fault is unreasonable

11 or arbitrary. *See Cannons,* 899 F.2d at 87. Accordingly, this court has no choice but to find the

12 settlements are substantively fair. *See id.*

13      C.    Reasonableness

14      In *Cannons,* the court found three factors relevant for evaluating the reasonableness of a

15 consent decree: (1) whether the settlement was likely to be effective in ensuring cleanup of the

16 property; (2) whether the public will be adequately compensated by the settlement; and (3) the

17 relative strengths of the parties. *Cannons,* 899 F.2d at 89-90. In the instant case, the settlements

18 provide partial funding in the amount of $450,000 for the cleanup of the Site to be completed by

19 DTSC. As a result, (1) the settlements promote effective cleanup of the site. (2) The public is

20 clearly benefitted by the settlement. Although Plaintiff covenants not to sue, there are exceptions

21 to that covenant contained in the Consent Decree that allow Plaintiff to bring new claims against

22 settling Defendants in the event new facts or contamination come to light. Finally, (3) the

23 settlements appear wise considering the respective strength of the parties, the financial condition

24 of settling Defendants, the past history of cooperation among the parties, and the long history of

25 litigation in the instant case.

26 / / /

27 / / /

28 / / /

D.   Faithfulness to CERCLA

CERCLA's goals are (1) to create a prompt and effective response to hazardous waste problems; and (2) to ensure those responsible for the contamination bear the costs and responsibility for remedial action.  *Cannons*, 899 F.2d at 90-91.  These concerns appear to be addressed in the instant case because (1) the contributions by settling Defendants to the public treasury will help ensure effective response to present and future problems at the Site and any other environmental contamination that may arise elsewhere in the state; and (2) it appears the settlement is fair and practicable given the financial condition of each Defendant, and the relative responsibility of each Defendant for the contamination.

E.   Objection of J.L. Shepherd

Defendant J.L. Shepherd argues the Consent Decrees should not be approved on the grounds that the amount of the settlement is indefinite due to the uncertainty surrounding the value of the Site, and the amount Plaintiff may eventually obtain from the prospective sale of the Site property. (*See* Opp'n at 2.) Defendant J.L. Shepherd also contends it is entitled to equitable set-off from Defendants. (*Id.* at 3.) The court, however, finds it would be better to wait until there is a final determination as to Defendant J.L. Shepherd's liability in the instant matter.  *See U.S. v. Stringfellow*, 661 F. Supp. 1053, 1060 (C.D. Cal. 1987).  Before apportioning fault, it would be prudent to first determine whether J.L. Shepherd is actually liable for contamination at the Site at all; and if so, determine the basis for J.L. Shepherd's liability before apportioning fault among all Defendants.  *See id.*

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

9

1    IV.    RULING

2            The court hereby approves the Consent Decrees pertaining to the following Defendants:

3    (1) Alco Pacific and Morris P. Kirk; and (2) Lead Products Co., Inc. (*See* P.&A. Exs. A & B.)

4    Approval and entry of each Consent Decree constitutes final judgment with respect to Defendants

5    Alco Pacific, Morris P. Kirk and Lead Products Co., Inc. pursuant to Fed. R. Civ. P. Rule 54(b).[1]

6            IT IS SO ORDERED.

7

8    Dated this _____ day of August, 2004.

9

10                                                              _____
                                                                        S. JAMES OTERO
11                                                              UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24   _____

25        [1] The Ninth Circuit has held a "trial court should not direct entry of judgment under Rule 54(b)
     unless it has made specific findings setting forth the reasons for its order." *Morrison-Knudsen Co.*
26   *v. Archer,* 655 F.2d 962, 965 (9th Cir. 1981). In the instant case, final judgment is entered in order
     to give finality to the settlement. The court finds it unlikely that entry of final judgment will lead to
27   piecemeal litigation of the instant case in the appellate courts. There being no cause for delay,
     the court finds it in the best interests of the court, as well as the parties, to render final judgment
28   as to the settling Defendants.

                                                    10